# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 12-16

**STATE OF LOUISIANA**

**VERSUS**

**BYRAN LOUIS FOGLEMAN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 303,545
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**James C. Downs**
**District Attorney**
**9th Judicial District**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**

**COUNSEL FOR DEFENDANT/APPELLANT:**
    Byran Louis Fogleman

**John T. Giordano**
**Assistant District Attorney**
**Post Office Drawer 1472**
**Alexandria, LA 71309-1472**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    State of Louisiana

**PETERS, J.**

A jury convicted the defendant, Byran Louis Fogleman, of the offense of creating or operating a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance, a violation of La.R.S. 40:983. The trial court sentenced the defendant to ten years at hard labor with the first three years of the sentence to be served without the benefit of probation, parole, or suspension of sentence. The defendant appealed his conviction, asserting two assignments of errors. For the following reasons, we affirm the conviction in all respects.

## DISCUSSION OF THE RECORD

On the morning of June 29, 2010, Lieutenant Kevin Rhodes of the Louisiana State Police stopped a vehicle being driven by Stanley Ammons near the intersection of Louisiana Highway 28 (La. 28) and Hyman Lane in Alexandria, Louisiana. The traffic stop resulted in the recovery of a black duffle bag containing various items used to manufacture methamphetamine. The bag was found on the passenger floorboard. The defendant occupied the passenger seat where the bag was situated.

Lieutenant Rhodes testified that at approximately 10:15 a.m. on June 29, 2010, he was traveling east on La. 28 and was stopped at a red light La. 28's intersection with Hyman Lane. He observed an older model Cadillac two cars ahead of him and ran a check on the vehicle's license plate. When the computer program reflected that the license plate had been cancelled, he initiated a stop of the vehicle. Ammons exited the vehicle, met Lt. Rhodes at the rear of the vehicle, and produced his driver's license.

While explaining to Ammons why he had made the traffic stop, Lt. Rhodes received a message on his portable radio that the license plate number he had provided was actually registered to a different vehicle. Believing that he was now

dealing with a case of switched license plates, Lt. Rhodes radioed for a tow truck for the Cadillac. As he made arrangements for the vehicle to be towed, Lt. Rhodes saw Ammons move to the passenger side of the vehicle and initiate a whispered discussion with the defendant. As soon as Ammons stepped back, the defendant attempted to exit the vehicle. Following agency policy to deal with one person at a time, Lt. Rhodes pushed the door shut, instructed the defendant to remain in the vehicle, and instructed Ammons to move to the front of the patrol unit and remain there. He then radioed for a backup unit.

A few moments later, Louisiana State Trooper Nathan Scharbono arrived at the scene, and Lt. Rhodes asked him to handle Ammons while he dealt with the defendant. He patted the defendant down and found no weapons or contraband. Still, he observed that the defendant seemed very nervous and anxious. Lt. Rhodes then requested a criminal background check on both Ammons and the defendant. This request revealed an outstanding warrant for Ammons, and he was immediately taken into custody.

After Lt. Rhodes had allowed the defendant to exit the vehicle, he noticed the black duffle bag on the floorboard and asked the defendant what the bag contained. According to Lt. Rhodes, the defendant initially responded that it contained his clothes. However, upon further questioning, he suggested that it belonged to a friend, but he could not supply the friend's name.

At this point, given the totality of the circumstances, Lt. Rhodes placed the defendant in handcuffs. A few moments later, Ammons informed Trooper Sharbono that the bag contained the components of a methamphetamine lab. Lieutenant Rhodes then placed the defendant under arrest as well, and Trooper Sharbono opened the bag to confirm Ammons' assertion. Upon his determination

2

that the bag contained contraband, Lt. Rhodes summoned members of the narcotics investigation team.

Trooper Sharbono's testimony supported that of Lt. Rhodes. He testified that when the outstanding warrant information was received, he physically took Ammons in custody by placing him under arrest, handcuffing him, informing him of his *Miranda* rights, and placing him in the back seat of his patrol unit. After Trooper Sharbono placed Ammons in the patrol car, he asked if there was anything "illegal" in the Cadillac. According to Trooper Sharbono, Ammons told him that the vehicle contained "stuff to cook meth." After Lt. Rhodes placed the defendant under arrest, Trooper Sharbono unzipped the black duffle bag and observed the contraband therein. According to Trooper Sharbono, the narcotics division was notified because of the unsafe nature of the chemicals. Thereafter, members of the narcotics division assumed the responsibility of handling the seized evidence.

Louisiana State Trooper Keith Nugent was the narcotics officer primarily responsible for securing the seized evidence. According to Trooper Nugent, the black duffle bag contained a box of salt, drain cleaner, an ice pack, a cap with a tube on the end, lithium batteries, a can of Coleman fuel, a bottle of rubbing alcohol, a pill grinder, and pseudoephedrine/ephedrine tablets. He testified that all of these items are used to manufacture methamphetamine. Additionally, Trooper Nugent testified that he recovered a Wal-Mart receipt from the black duffle bag which indicated that the pseudoephedrine/ephedrine pills had been purchased approximately ten to fifteen minutes before Lt. Rhodes conducted his traffic stop.[1] He also recovered a pump sprayer from the back seat of the vehicle, another device which he suggested would be commonly found in methamphetamine labs.

---

[1] The record establishes that a Wal-Mart store is located on La. 28 immediately west of the location where Lt. Rhodes initiated the traffic stop.

3

As a part of his investigation, Trooper Nugent interviewed the defendant on the day of his arrest. According to Trooper Nugent, the defendant asserted that Ammons had contacted him and that they had agreed to meet at the Nottingham Apartments in Alexandria, whereafter both men injected methamphetamine. Next, they traveled to Wal-Mart where the seized material was purchased by Ammons. The defendant informed Trooper Nugent that he had wanted a ride to his brother's house in the Hineston community in Rapides Parish. The defendant also informed Trooper Nugent that Ammons had told him that he intended to cook methamphetamine later that evening. According to Trooper Nugent, the defendant also noted that he and Ammons had used methamphetamine the previous day.

Trooper Nugent also interviewed Ammons, who had a story different from that of the defendant. According to Trooper Nugent, Ammons told him that the defendant was going to Hineston to cook methamphetamine, and that the black duffle bag belonged to the defendant. However, at no time did the defendant ever state that the bag belonged to him.

The seized evidence was ultimately transferred to the North Louisiana Crime Lab where it was analyzed by Alex King, a forensic chemistry expert. Mr. King confirmed in his trial testimony that the items seized by Lt. Rhodes and Trooper Sharbono on June 29, 2010, were all items commonly combined to manufacture methamphetamine.

**OPINION**

In his appeal, the defendant asserts two assignments of error:

1. In the absence of proof of the requisite intent, the State failed to prove beyond a reasonable doubt that Bryan Louis Fogleman was guilty of creating or operating a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance.

4

2. The trial court violated Bryan Louis Fogleman's right to present a defense when it refused to allow the introduction of Stanley Ammon[s]'s exculpatory affidavit in evidence.

### *Assignment of Error Number One*

Louisiana Revised Statutes 40:983(B) provides that "[i]t shall be unlawful for any person to knowingly or intentionally create or operate a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance." One may commit the offense of creation or operation of a clandestine laboratory through "[t]he purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance." La.R.S. 40:983(A)(1). Methamphetamine is a Schedule II controlled dangerous substance. La.R.S. 40:964.

In this assignment of error, the defendant does not question the finding that the contents of the black duffel bag sufficiently met the definition of La.R.S. 40:983(A)(1). Instead, he argues that there was insufficient evidence to establish beyond a reasonable doubt that he possessed the items in the bag with the requisite intent to use them to unlawfully manufacture a controlled dangerous substance. The defendant asserts that the requisite intent is specific criminal intent, while the state argues that it is only required to prove a general criminal intent to satisfy its burden of proof.

The defendant argues that the use of phrase "with the intent" in La.R.S. 40:983(A)(1) establishes a specific criminal intent requirement. In asserting this

5

argument, he relies on the following supreme court's language in *State v. Elzie*, 343 So.2d 712, 713-14 (La.1977): [2]

> [I]n Louisiana, we require proof of specific intent where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence (the frequent language being "with intent to . . ."). See e.g. *State v. Lewis*, 288 So.2d 348 (La.1974) (burglary); *State v. Fontenot*, 256 La. 12, 235 So.2d 75 (1970) (obscenity); and *State v. Daniels*, 236 La. 998, 109 So.2d 896 (1959) (public intimidation), (overruled insofar as a procedural point, *State v. Gatlin*, 241 La. 321, 129 So.2d 4, 7--8 (1961), but not as to its substantive holding). See also LaFave and Scott, Criminal Law, Section 28 (1972).

In considering the defendant's argument, we note that in *State v. Shumaker*, 40,275, pp. 9-10 (La.App. 2 Cir. 10/28/05), 914 So.2d 1156, 1164 (footnote omitted), the second circuit specifically discussed the intent required for a violation of La.R.S. 40:983(B) and reached the following conclusion:

> The contested statute states that it is unlawful to "knowingly or intentionally create or operate" a laboratory for the illegal manufacture of a CDS and lists four groups of activities that may amount to the crime of creation or operation of a clandestine laboratory. La. R.S. 40:983. The first group describes activities encompassing preparatory work for the manufacture of methamphetamine. See subsection A(1) of the statute. This provision deals with possession of materials, compounds and equipment, "with the intent" that they be used for the manufacture of a CDS. In the absence of qualifying provisions, the term "intent" has reference to general criminal intent, La. R.S. 14:11, and such general criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences of his act or failure to act. La. R.S. 14:10.

In *State v. Holmes*, 388 So.2d 722, 727 (La.1980), the supreme court stated: "In general intent crimes, [the] criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal."

---

[2] The defendant also cites as authority for his position *State v. Robertson,* 06-167 (La.App. 3 Cir. 7/16/08), 988 So.2d 294, *writ denied*, 08-2301 (La. 9/4/09), 17 So.3d 950. However, we do not find that *Robertson* addressed the issue of requisite intent required in La.R.S. 40: 983(A)(1).

Based on the language of La.R.S. 14:11, the second circuit's interpretation of La.R.S. 40:983 in *Shumaker*, 914 So.2d 1156, and the language used by the supreme court in *Holmes*, 388 So.2d 722, we conclude that creation or operation of a clandestine laboratory is a general intent crime, and that the mere act of possessing the items found in the bag is sufficient to prove the general intent to commit the offense at issue.

Having concluded that the state need only establish that the defendant possessed the items found in the black duffle bag to establish the requisite intent required to convict the defendant of the charged offense, we next turn to an analysis of the evidence presented on the possession issue. The defendant asserts that it was insufficient to establish his possession beyond a reasonable doubt.

> The standard of review in a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 1920. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 5-6 (La. 6/1/07), 957 So.2d 1280, 1285-86.

The defendant argues that his admission to Trooper Nugent regarding his and Ammons' use of methamphetamine, coupled with the black duffle bag's proximity to his person, are not sufficient factual findings standing alone to satisfy the state's burden of proof on the possession element. He notes that the record also establishes that the vehicle belonged to Ammons; that Ammons was the one who told Trooper Sharbono that the contraband was not only in the vehicle, but was

specifically present in the black duffle bag; that he was not in physical possession of the bag when the contents were discovered by Trooper Sharbono; and that, based on the conflicting statements made by he and Ammons accusing each other of intending to later use the contents of the bag to manufacture methamphetamine, there is reasonable doubt concerning his acts of possession.

In addressing a possession case where the defendant was not in physical possession of the narcotics at issue, the supreme court in *State v. Toups*, 01-1875, pp. 3-4 (La. 10/15/02), 833 So.2d 910, 913 stated the following:

> The State need not prove that the defendant was in physical possession of the narcotics found; constructive possession is sufficient to support a conviction. The law on constructive possession is as follows:
>
> > A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it. . . . Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug . . . .
>
> *State v. Trahan*, 425 So.2d 1222 (La.1983) (citing *State v. Smith*, 257 La. 1109, 245 So.327, 329 (1971)).
>
> However, it is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession. *State v. Harris*, 94-0970 (La.12/8/94), 647 So.2d 337; *State v. Bell*, 566 So.2d 959 (La.1990).
>
> A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. *State v. Hughes*, 587 So.2d 31, 43 (La.App. 2 Cir. 1991), *writ denied*, 590 So.2d 1197 (La.1992); see also *Bujol v. Cain*, 713 F.2d 112 (5 Cior.1983), *cert denied*, 464 U.S. 1049, 104 S.Ct. 726, 79 L.Ed. 2d 187 (1984) (listing above factors as well as a sixth factor: "evidence that the area was frequented by drug users").

Applying the supreme court holding in *Toups* and viewing the evidence before us in the light most favorable to the prosecution, we conclude that a rational trier of fact could conclude that the state met its burden of proof in establishing beyond a reasonable doubt that the defendant had the requisite criminal intent to possess the contents of the black duffle bag. *See also State v. Ankrum*, 573 So.2d 244 (La.App. 1 Cir. 1990); *State v. Collins*, 43,645 (La.App. 2 Cir. 10/29/08), 998 So.2d 765, *writ denied*, 09-233 (La. 4/9/10), 31 So.3d 379. Thus, we find no merit in the defendant's first assignment of error.

### Assignment of Error Number Two

Based on the investigative findings of the June 29, 2010, incident, the state charged both Ammons and the defendant with a violation of La.R.S. 40:983. On January 27, 2011, or roughly three months before the beginning of the defendant's trial on May 3, 2011, Ammons entered a guilty plea to the charge. Less than two months later, on March 17, 2011, Ammons executed an affidavit which reads in pertinent part as follows:

> Affiant, Stanley Ammons states that he was arrested on June 29, 2010 for create/operate clad [sic] lab and pled guilty to this charge on January 27, 2011.

> Affiant also states that on June 29, 2010 before being arrested for the above charge, a person by the name of Byran Fogleman, PIN#26563 asked him to give him a ride from one place to another. Affiant states that while giving Mr. Fogleman a ride, he was stopped and arrested. Mr. Fogleman was also arrested for the same charge.

> Affiant further states that Mr. Fogleman had no knowledge whatsoever that there was [sic] any type of illegal materials inside affiant's vehicle or trunk area.

> Affiant states that this is a true statement.

Immediately after the state rested its case, the defendant's counsel announced that he intended to call Ammons as a witness for the defendant.

9

Although Ammons had already entered a guilty plea to his activity giving rise to the June 29, 2010, criminal charges, he had other charges pending and at the time of the defendant's trial, those charges were subject to the involvement of a sanity commission which had yet to return a report. The attorney representing Ammons in the pending charges was not available to consult with his client and the trial court appointed a representative of the Public Defender's Office to counsel him concerning testifying. The appointed attorney conferred with Ammons and then announced to the trial court that Ammons declined to testify, invoking his Fifth Amendment privilege pursuant to the United State Constitution.

The defendant's counsel then moved to introduce the March 17, 2011, affidavit as a statement against interest under La.Code Evid. art. 804(B). The state objected, asserting that it was not a statement against interest because it was made after he entered a guilty plea to the charge. Thus, the state asserted, the affidavit is inadmissible hearsay. The trial court agreed and rejected the defendant's motion. The defendant then proffered the affidavit.

Louisiana Code of Evidence Article 804(B)(3) provides that a statement against interest is not excluded by the hearsay rule if the declarant is unavailable as a witness. That Article defines a statement against interest as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The defendant asserts that the "corroborating circumstances" element is satisfied by the evidence to the effect that the defendant had asked Ammons for a ride to his brother's house, that the materials for the methamphetamine lab were found in

10

Ammons' vehicle, and that Ammons was the individual who pointed out the contraband to the investigating officers. The defendant also argues that the affidavit should have been admitted to safeguard his fundamental constitutional right to present a defense, and without it the jury was deprived of the evidence it needed to justly and fairly make a decision in his case.

On the other hand, the state argues that the defendant failed to establish the trustworthiness of the affidavit. In making this argument, the state points to the fact that Ammons executed the affidavit over two months after his conviction, and additionally, that Ammons refused to testify at the defendant's trial.

In considering these arguments, we first note that a criminal defendant's right to present a defense is a constitutional right protected by both the United States and Louisiana Constitutions. U.S. Const. Amend. 6; La.Const. art. 1 § 16; *State v. Van Winkle*, 94-0947 (La. 6/30/95), 658 So.2d 198. Additionally, the right of a defendant to use a statement made against penal interest has also been recognized as a fundamental right if presented within certain parameters. In *State v. Hammons*, 597 So. 2d 990, 995-97 (La.1992) (footnotes omitted), the supreme court summarized the history of this fundamental right as follows:

> Louisiana's rule as to statements against penal interest is closely patterned after Fed.R.Evid. 804. The history of the federal rule is therefore pertinent.
>
> At common law, only statements against pecuniary or proprietary interest were originally admissible as an exception to the hearsay rule. Statements against penal interest were not accepted because of the fear that such statements, particularly when offered to exculpate the accused, would be fabricated by the witness testifying to his knowledge of the statement or by someone who would then make himself unavailable. 5 John H. Wigmore, *Evidence in Trials at Common Law* § 1476-77 (Chadbourn rev., 1974); 4 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 489 (1980); 2 Stephen A. Saltzburg & Michael M. Martin, *Federal Rules of Evidence Manual* 401 (5th ed. 1990). Scholars and dissenting jurists persistently criticized the exclusion of such evidence. *Donnelly v.*

11

*United States*, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (Holmes, J., dissenting); Wigmore, *supra*, § 1476-77. Eventually courts began to admit declarations against penal interest. Louisell & Mueller, *supra*, § 489; *McCormick on Evidence* § 278 (Edward W. Cleary ed., 3rd ed 1984); see *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

Prompted by these rulings, Congress incorporated in the federal rules an exclusion from the hearsay rule for statements against penal interest. However, because of the traditional suspect nature of admitting statements by a third-party that exculpate an accused, the federal rules specifically prohibited admission of these statements unless the declarant is unavailable and corroborating circumstances clearly indicate the trustworthiness of the declaration. Fed.R.Evid. 804(b)(3); *McCormick on Evidence*, *supra*, § 278; Louisell & Mueller, *supra*, § 489.

Statements against penal interest were first recognized by this court as exceptions to the hearsay rule in *State v. Gilmore*, 332 So.2d 789 (La.1976). In *Gilmore* the defendant presented a witness' testimony that another man had confessed to committing the crime for which the defendant was charged. The declarant died after making the statement and was unavailable for trial. Other evidence established that the declarant had been in a struggle with the victim moments before the victim was shot and had also confessed the shooting to others. This court held that this additional evidence indicating the statement's reliability, along with the unavailability of the declarant, made the statement admissible as an exception to the hearsay rule.

Admission of statements against interest, as a traditional exception to the hearsay rule, is based on necessity and trustworthiness. The unavailability of the declarant requirement generally establishes the need to admit his out-of-court statement. The "against interest" requirement assures some degree of trustworthiness, because a person ordinarily does not make a statement that is disadvantageous to himself without substantial reason to believe that the statement is true. Louisell & Mueller, *supra*, § 489.

Fed.R.Evid. 804(b)(3) requires for admissibility of a statement against interest the objective determination that "a reasonable man in his position would not have made the statement unless he believed it to be true." This standard is especially appropriate to the admission of having committed a crime. Louisell & Mueller, *supra*, § 489; *McCormick on Evidence*, *supra*,§ 279; *State v. Rushing*, 464 So.2d 268 (La.1985); *State v. Hudson*, 361 So.2d 858 (La.1978).

When the statement is one against the declarant's penal interest, the circumstances surrounding the making of the statement may be

significant in determining its trustworthiness. If a declarant admits sole responsibility for a serious crime, the statement is generally prima facie against interest so as to satisfy this requirement of the rule. Louisell & Mueller, *supra*, § 489. However, if the statement is clearly self-serving, as when the declarant is seeking favorable treatment for himself in return for cooperation, the statement may be deemed not against his interest and thus may fall outside the exception. *Id.* Likewise, when the declarant *unknowingly* speaks to informants or undercover agents, the statement is usually admissible under the exception. *Id.*; see also *McCormick on Evidence*, *supra*, § 279; Saltzburg & Martin, *supra*, 401.

When the statement tending to expose the declarant to criminal liability is offered to exculpate the accused, La.Code.Evid. art. 804 B(3) expressly requires corroborating circumstances indicating trustworthiness. The burden of satisfying the corroboration requirement is on the accused. Louisell & Mueller, *supra*, § 489 (Supp.1991). That burden may be satisfied by evidence independent of the statement which tends, either directly or circumstantially, to establish a matter asserted by the statement. Louisell & Mueller, *supra*, § 489. Circumstantial evidence of the veracity of the declarant as to the portion of the statement exonerating the accused is generally sufficient. Typical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused. *Id.* at 1160.

The first element a defendant must establish in order to obtain admissibility of a statement against penal interest is that the when the statement was made, it was "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true." La. Code Evid. art. 804(B)(3). We find that the defendant failed to meet this burden of proof.

This statement was made by Ammons at a time when his criminal troubles with the June 29, 2010, incident were over. Thus, the statement was not contrary to his pecuniary or proprietary interest, did not subject him to civil or criminal liability, and did not invalidate a claim by him against another person. To accept

13

such a statement as an exception to the hearsay rule would, in all probability, open the floodgates for statements from convicted criminal offenders asserting the innocence of other untried codefendants. The affiant, in aid of a codefendant, could simply decline to testify based on his Fifth Amendment privilege, claim sole responsibility for an offense without any further repercussions to himself, and avoid cross-examination relative to his motives for making the statement. We find no error in the trial court's refusal to allow Ammons' affidavit introduction into evidence.

### *Errors Patent*

In addition to the assignment of errors raised by a defendant, La.Code Crim. P. art. 920 requires that we review an appeal for "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." We have performed this error patent review and find no such errors.

### DISPOSITION

For the foregoing reasons, we affirm the defendant's conviction in all respects.

**AFFIRMED.**

14