# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-527

STATE OF LOUISIANA

VERSUS

**ROBERT SINEGAL**
**AKA, ROBERT SENEGAL**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 60085-R
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Keith A. Stutes**
**District Attorney**
**Post Office Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Roger P. Hamilton, Jr.**
**Assistant District Attorney**
**100 North State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2806**
**Monroe, LA   71207-2806**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Robert Sinegal**

**AMY, Judge.**

After probation and parole agents, as well as officers, seized evidence following their execution of a parole warrant, the State charged the defendant with creation of a clandestine laboratory and possession of a firearm by a convicted felon. A jury convicted the defendant as charged. The trial court sentenced the defendant to five years at hard labor for the creation of a clandestine laboratory charge and fifteen years for the possession of a firearm charge, with the sentences to run concurrently. The defendant appeals. For the following reasons, we affirm with instructions.

## Factual and Procedural Background

On September 25, 2015, agents with the Louisiana Department of Corrections, Office of Probation and Parole, as well as officers from the Kaplan Police Department and members of the canine unit, arrived at a residence to execute a parole warrant on Robert Sinegal. After the officers located him and collected evidence inside the residence, the State charged the defendant, Robert Sinegal, with creation of a clandestine laboratory, a violation of La.R.S. 40:983(A), and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The defendant filed a motion to suppress the evidence, arguing that the search was unreasonable because it was performed without a warrant. The trial court denied the motion to suppress, and the matter proceeded to trial by jury.

At trial, Kelly Hardy, a probation and parole officer, testified that the officers went to that particular residence because Virgie Lemaire, Assistant Chief of the Kaplan Police Department, had received information that the defendant was staying there. According to Agent Hardy, the parole warrant had been issued "based on the activity report that [the defendant] was no longer residing at his

listed address" and "had not reported for the last two months." Agent Hardy further explained that the reason there were "so many"[1] to execute the warrant was "because of [the defendant]'s escape history and the information . . . received that he was in possession of a weapon."

Upon arriving at the residence, Agent Hardy explained that they "were knocking, yelling, [and] ordering [the defendant] to come out." Agent Hardy stated that a woman, who was identified as Danielle Willis,[2] eventually exited the residence. Assistant Chief Lemaire testified that after she notified Ms. Willis of her rights, Ms. Willis confirmed that the defendant was in the residence. Agent Hardy stated that the officers continued to call for the defendant to come out and ultimately entered the residence because the defendant did not exit. After failing to locate the defendant on the first floor, Agent Hardy testified that she proceeded to the second floor.

Upstairs, Agent Hardy explained that "there was an alcove with a window" and that there were clothes hanging on a rod in the alcove. Agent Hardy then described the following sequence of events:

> So I un-holstered my weapon for my safety and started moving the clothes. Actually, I started taking them off at some point and just throwing them down. And when I got about halfway, I saw a foot with a flip-flop. I backed up and I started yelling for [the defendant] to get out, put his hands up . . . .
>
> At that point, where he was sitting, he was crouched up, on top of [a] chest. . . . He turned around and opened the window and immediately ran up, onto the roof. . . .
>
> . . . .

---

[1] Agent Hardy stated: "[W]e assembled probably fifteen officers, various officers, and three canine dogs."

[2] Assistant Chief Lemaire testified that Ms. Willis "live[d] at that house" which was her "grandmother's house." Additionally, Assistant Chief Lemaire stated that the defendant was "[Ms. Willis's] known boyfriend at the time."

So I showed him I had the parole warrant. I told him to come down. He eventually slipped down, off of the roof, to me and [Assistant Chief Lemaire]. . . .

While we were holding him, he was searched. I don't remember exactly who searched him. But as I was standing there, they handed me a glass pipe which is normally used for smoking . . . synthetic drugs, . . . crack cocaine, . . . meth[amphetamine], . . . marijuana.

Agent Hardy clarified: "Whoever was searching [the defendant] reached in [the defendant's] pocket and, from the pocket, handed me the glass pipe."

Subsequently, Agent Hardy explained that they placed the defendant in one of the police units and then "received information that there was [sic] other things inside the residence." Upon reentering the residence, Agent Hardy explained that she returned upstairs to where she had earlier found the defendant and "located some . . . white powdery reside [sic] on the carpet" and "some white coffee filters on a table[.]" Agent Kylie Sands testified that she also searched the second floor, where she "saw a white powdery substance in the carpet, one plate" with "a white powdery substance residue in it, and a metal strainer, a coffee cup with white powdery substance residue in it as well."

At trial, Amanda Hebert, a forensic chemist in the Acadiana Crime Lab's drug chemistry section, testified that she analyzed the abovementioned evidence. In particular, Ms. Hebert said that the glass pipe "was determined to be drug paraphernalia." Regarding the coffee filters and metal filter/strainer submitted as evidence, Ms. Hebert stated that she has seen such items used in clandestine laboratories. Additionally, Ms. Hebert explained that after testing the coffee cup, "the result was methamphetamine." Ms. Hebert explained that she "also identified methamphetamine on the white powder" and that it was "methamphetamine with a net weight of 0.24 grams." Ms. Hebert answered affirmatively when asked

3

whether "methamphetamine would be the product, if someone would create a lab[.]"

The group of agents and officers also searched the first floor of the residence, where Agent Melissa Bares stated that she removed the cushions from a sofa. Agent Alan Carpenter explained that the sofa contained a bed and that when he and Agent Hardy "went to grab the rail of the bed[,]" he "looked over, inside of it" and "saw the pistol grip of a semiautomatic weapon." Agent Hardy testified similarly that when she and Agent Carpenter "grabbed the railing to pull the bedding out, there was a gun located on the floor." Sean Boneski, a lieutenant detective with the Kaplan Police Department, testified that he collected the items that were found by the officers, including the weapon. Detective Boneski explained that a shirt "was found by" the weapon and that "Ms. Willis . . . said that that was [the defendant's] shirt."

Thereafter, Sergeant William Seaux of the Kaplan Police Department explained that he and Agent Hardy transported the defendant to the Kaplan Police Department and then to the Vermilion Parish Sheriff's Office, where the sheriff's deputy searched the defendant. Agent Hardy and Sergeant Seaux testified that they observed the deputy search the defendant and pull a bullet out of the defendant's pocket. Sergeant Seaux identified Deputy Trey D'Augereau as the deputy who had retrieved the bullet from the defendant's pocket. Deputy D'Augereau testified that on the date in question, he was employed as a corrections officer at the jail. In that capacity, he stated that he did not remember searching the defendant but recalled retrieving a bullet from "[t]he back pocket."[3] Phillip Stoute, a forensic chemist in

_____

[3] The following colloquy took place during Officer D'Augereau's testimony:

4

the Acadiana Crime Lab's physical evidence section, testified that the officers submitted the weapon and the bullet to the laboratory for analysis. Mr. Stoute explained that the weapon and the bullet are the same caliber.

Ultimately, the jury returned a verdict of guilty of creation of a clandestine laboratory and guilty of unlawful possession of a firearm by a convicted felon. The trial court sentenced the defendant to serve five years at hard labor for the creation of a clandestine laboratory conviction, and the trial court sentenced the defendant to "[f]ifteen years to be served without benefit, to run concurrent with count one." The defendant appeals his conviction, asserting as error that:

I. The Trial Court erred in denying the Motion to Suppress Evidence filed by the defendant in this matter.

II. The evidence adduced at trial was not sufficient to prove beyond a reasonable doubt that [the defendant] was guilty of the creation of a clandestine laboratory or the possession of a firearm by a convicted felon.

---

Q. Can you tell us - - do you remember searching him?

A. No. I don't remember searching him.

Q. Do you recall retrieving a bullet off of him?

A. Yes.

. . . .

Q. Do you recall where you retrieved that from?

A. The back pocket.

Q. Whose back pocket?

A. That, I don't remember.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent. An error patent is one which is "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2).

On review, we note errors with regard to the sentences as reflected in the minutes of the sentencing hearing and the commitment order. Namely, the minutes and the commitment order indicate that the sentences are to run concurrent with each other and with any other sentence the defendant may be serving. However, the transcript of the sentencing hearing instead reveals that the trial court ordered that the defendant's sentences were to run concurrent to each other only.[4] If there is a conflict between the minutes and the transcript, the transcript prevails. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we instruct the trial court to correct the minutes and the commitment order to reflect that the sentences were only ordered to run concurrently with each other, not with any other sentence the defendant may be serving.

*Sufficiency of the Evidence*

In his second assignment of error, the defendant asserts that "[t]he evidence adduced at trial was not sufficient to prove beyond a reasonable doubt that [the defendant] was guilty of the creation of a clandestine laboratory or the possession of a firearm by a convicted felon." When assignments of error are raised on appeal regarding both the sufficiency of the evidence and one or more trial errors, the

---

[4] In announcing the sentence for count two, the trial judge stated, in pertinent part: "Fifteen years . . . to run concurrent with count one."

6

reviewing court should first resolve the issue of the sufficiency of the evidence. *State v. Hearold*, 603 So.2d 731 (La.1992). The rationale is that a review of the evidence might lead to the conclusion that the defendant is entitled to an acquittal, thus rendering the other issues moot. *Id.* If the reviewing court finds, however, that the evidence is sufficient to support the defendant's conviction, then the court turns to consideration of the other assignments of error. *Id.* Accordingly, we will begin by addressing the defendant's second assignment of error regarding the sufficiency of the evidence.

A reviewing court analyzes an insufficiency of the evidence claim based on the following standard:

> In reviewing the sufficiency of the evidence to support a conviction, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. **State v. Captville**, 448 So.2d 676, 678 (La. 1984) (citing **Jackson v. Virginia**, 443 U.S. 307, 316-19, 99 S.Ct. 2781, 2787-89, 61 L.Ed.2d 560 (1979)) ("[N]o person shall be made to suffer the onus of a criminal conviction except upon sufficient proof--defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense .... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). See also LSA-C.Cr.P. Art. 821(B) ("A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.").

*State v. Clark*, 12-0508, pp. 42-43 (La. 12/19/16), 220 So.3d 583, 625 (footnote omitted), *petition for cert. filed* (U.S. June 10, 2017) (No. 16-9541). With this legal standard in mind, we turn to consideration of the evidence presented at trial in light of the defendant's assignment of error.

Creation of a clandestine laboratory:

The defendant contends that "[t]he evidence adduced at trial was not sufficient to prove beyond a reasonable doubt that [the defendant] was guilty of the creation of a clandestine laboratory." The crime of creation of a clandestine laboratory is found in La.R.S. 40:983, which states, in pertinent part:

> A. Creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance is any of the following:
>
> (1) The purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance.

The mere act of possessing items used to create or operate a clandestine laboratory is sufficient to prove that the defendant generally intended to create or operate a clandestine laboratory. *State v. Fogleman*, 12-16 (La.App. 3 Cir. 10/3/12), 98 So.3d 964. The defendant has not questioned the determination that the items seized sufficiently meet the definition of La.R.S. 40:983(A)(1), and Ms. Hebert identified some of the evidence as meeting the definition of La.R.S. 40:983(A)(1) at trial.[5] Thus, we find that the pertinent issue is whether the defendant actually or constructively possessed the items. *See Fogleman*, 98 So.3d 964.

To support a conviction for creation of a clandestine laboratory, the State does not have to prove that a defendant was in actual, physical possession of the items; rather, constructive possession is sufficient to support a conviction. *Fogleman,* 98 So.3d 964 (quoting *State v. Toups*, 01-1875 (La. 10/15/02), 833 So.2d 910). Constructive possession exists if the items are subject to a defendant's

---

[5] Regarding the coffee filters and metal filter/strainer submitted as evidence, Ms. Hebert stated that she has seen such items used in clandestine laboratories. Ms. Hebert testified that she identified methamphetamine on the white powder as well as the coffee cup and answered affirmatively when asked whether "methamphetamine would be the product, if someone would create a lab[.]"

8

dominion and control. *Id.* Among the factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are his access to the area where the items were found as well as his physical proximity to the items. *Id.* Additionally, the possession of drug paraphernalia and flight are considered indicative of guilty knowledge. *See State v. Hunter*, 09-1487 (La.App. 3 Cir. 6/2/10), 41 So.3d 546.

Turning to the facts of this case, the officers testified that the items were found upstairs where the defendant was found hiding, thus in an area to which the defendant had access and putting the defendant in proximity to the items. *See, e.g., Fogleman,* 98 So.3d 964. Moreover, Agent Hardy testified that the defendant was found in possession of a glass pipe that Agent Hardy stated "is normally used for smoking . . . synthetic drugs, . . . crack cocaine, . . . meth[amphetamine], . . . marijuana." *See Hunter*, 41 So.3d 546. Additionally, the defendant hid from the officers and attempted to flee from Agent Hardy. *Id.* Considering the foregoing and the *Jackson* standard of review, we find that any rational trier of fact could conclude that the State met its burden of proof in establishing that the defendant constructively possessed items for the creation of a clandestine laboratory.

Possession of a firearm by a convicted felon:

Within his second assignment of error, the defendant also declares that "[t]he evidence adduced at trial was not sufficient to prove beyond a reasonable doubt that [the defendant] was guilty of . . . the possession of a firearm by a convicted felon." The crime of possession of a firearm by a convicted felon is found in La.R.S. 14:95.1 (footnote omitted), which provides, in pertinent part:

> A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary of a pharmacy, burglary of an inhabited dwelling,

9

unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

. . . .

C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

Thus, the State must prove beyond a reasonable doubt that 1) the defendant possessed a firearm; 2) the defendant has a previous conviction for one of the enumerated felonies; 3) the ten-year cleansing period for the prior conviction had not elapsed at the time of possession; and 4) the defendant had the general intent to commit the crime. La.R.S. 14:95.1. *See also State v. Recard*, 97-754 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, *writ denied*, 97-3187 (La. 5/1/98), 805 So.2d 200. We turn to consideration of the elements in light of the evidence presented at trial.

Preliminarily, we consider the second and third elements regarding a previous conviction for a statutorily enumerated felony within the ten-year period preceding the incident. With regard to these elements in his brief to this court, the defendant notes that: "The State alleged in the bill of information that [the defendant] had been previously convicted of aggravated flight from an officer on November 17, 2014. Aggravated flight would qualify as a predicate and a 2014 conviction would have meant the 10 year cleansing period had not elapsed."

Moreover, the record reveals that at the beginning of its case, the State introduced State's Exhibit 1, which included a minute entry showing that the defendant pled guilty to aggravated flight from an officer on November 17, 2014, and two minute entries showing the defendant pled guilty to two separate counts of possession with the intent to distribute cocaine on July 6, 2010.

With regard to whether the evidence was sufficient to demonstrate that the defendant possessed the weapon and had general criminal intent:

> Actual possession of a firearm is not necessary to satisfy the possession element of the statute; it is sufficient that the subject had constructive possession. A person is in constructive possession of a thing if it is subject to his dominion and control. A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. The jurisprudence additionally requires proof that the offender was aware that a firearm was in his presence, and that he had the general criminal intent to possess the weapon.

*State v. Lee*, 02-0704, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 593, (footnotes omitted), *writ denied*, 03-0535 (La. 10/17/03), 855 So.2d 755. *See also State v. Ceasar*, 11-1406 (La.App. 3 Cir. 6/6/12), 91 So.3d 1231. General intent is a question of fact that "may be inferred from the circumstances of a transaction." *State v. Johnson*, 09-862, p. 3 (La.App. 3 Cir. 2/3/10), 28 So.3d 1263, 1267. *See also* La.R.S.14:10. The general intent to commit the offense of possession of a firearm by a convicted felon may be proven through the constructive possession of the firearm. *State v. Turner*, 46,049 (La.App. 2 Cir. 2/16/11), 57 So.3d 1209. Additionally, "[e]vidence of flight, concealment, and attempt to avoid apprehension . . . indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt." *State v. Davies*, 350 So.2d 586, 588 (La.1977).

11

Applying the above standard, we find that the evidence was sufficient to prove that the defendant had constructive possession of the weapon and the general intent to commit the offense of possession of a firearm by a convicted felon. In particular, considering the testimony that the defendant was located on the second floor and that the residence was small,[6] the defendant must have been on the first floor, and, thus, in close proximity to the weapon, at some point. Additionally, the officers testified that they had received information that the defendant was in possession of a weapon. Further, Detective Boneski explained that Ms. Willis informed the officers that a shirt found next to the weapon belonged to the defendant. Moreover, the record reveals that the defendant was found in possession of a bullet of the same caliber as the weapon found inside the residence. Lastly, the finding is supported by the testimony that the defendant was found hiding in the alcove and attempted to flee from Agent Hardy. *See Davies*, 350 So.2d 586. After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of possession of a firearm by a convicted felon proven beyond a reasonable doubt.

In sum, we find that the defendant's assignment of error regarding the sufficiency of the evidence is without merit.

*Motion to Suppress Evidence*

In his remaining assignment of error, the defendant asserts that the trial court erred in denying his motion to suppress the evidence seized by the officers during the search. In *State v. Bolden*, 09-33, p. 4-5 (La.App. 5 Cir. 5/12/09), 13 So.3d

---

[6] In her testimony, Agent Hardy stated: "I say residence. It was small . . . I would say probably . . . the width of it would be twenty-five feet, maybe, by fifteen feet; small residence."

1168, 1171, *writ denied*, 09-1317 (La. 2/5/10), 27 So.3d 297, a panel of the fifth circuit reviewed the denial of a parolee's motion to suppress evidence and stated the following about warrantless searches of parolees and probationers:

> [A] person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under Article I, § 5 of the Louisiana Constitution. *State v. Young*, 07-988 (La.App. 5 Cir. 6/19/08), 988 So.2d 759, 762.
>
> . . . .
>
> A probation officer may not use his authority as a subterfuge to help another police agency that desires to conduct a search, but lacks probable cause. *State v. Malone*, 403 So.2d 1234, 1238 (La.1981). The parole or probation officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. *State v. Saulsby*, 892 So.2d at 658. In determining whether a warrantless search by a probation or parole officer was reasonable, the court must consider: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted. *State v. Malone*, 403 So.2d at 1239; *State v. Young*, 988 So.2d at 763-764. Although the State still bears the burden of proving the admissibility of evidence seized without a warrant, when the search is conducted for probation violations, the State's burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring. *State v. Saulsby*, 892 So.2d at 658.

When ruling on a motion to suppress, the trial court has great discretion, and its decision should not be disturbed on review absent an abuse of that discretion. *State v. Wilder*, 09-2322 (La. 12/18/09), 24 So.3d 197.

At the hearing, the State had the burden of proof[7] and introduced the testimony of Agent Hardy as reflected in the trial court's ruling. Agent Hardy stated that the parole warrant had been issued because the defendant could not be located at his listed address and had not reported to his parole agent for two

---

[7] Louisiana Code of Criminal Procedure Article 703(D) states, in pertinent part, that: "On the trial of a motion to suppress . . . , the burden of proof is on the defendant to prove the ground of his motion, except that the [S]tate shall have the burden of proving the admissibility . . . of any evidence seized without a warrant."

months. Agent Hardy explained that "so many[,]" including Kaplan Police Department officers, were gathered, and they "planned out the location of the residence and how [they] would approach it" because of their "many concerns." Specifically, Agent Hardy mentioned the defendant's "noted history of escaping and fleeing from officers" as well as "information that [the defendant] was carrying a gun." Agent Hardy testified that the officers arrived to execute the warrant at a location where the defendant was alleged to be staying based on information received by Assistant Chief Lemaire. Thereafter, Agent Hardy explained that the officers did not enter the residence until after Ms. Willis notified them that the defendant was inside and after the defendant failed to exit after they knocked and announced their presence.

Agent Hardy explained that the officers' search of the residence began after they found a glass pipe on the defendant and received information that more items were inside. Upon returning to the residence, Agent Hardy testified that the plate as well as the cup and thermos containing residue were located "when [the officers] walked up, into the top room, to the left, almost immediately, down on the floor." Moreover, Agent Hardy testified that the officers had received information that the defendant had been seen carrying a weapon.

In denying the defendant's motion to suppress the evidence, the trial judge concluded:

> [T]his court accepts that . . . the jurisprudence holds that a person on parole does have a reduced expectation of privacy, and warrantless searches of a parolee's residence is [sic] a standard condition of parole or probation.
>
>     . . . .
>
>     In this particular case, there was testimony that the parole agent, Kelly Hardy, was aware of an outstanding . . . parole warrant, for the

purposes of non-reporting. There was testimony that [the Kaplan Police Department], through Virgie Lemaire, had knowledge that the defendant was staying at the residence that was searched.

So I find, in accordance with [*Bolden*], that [the defendant's] reduced expectation of privacy attached to the place where [the defendant was] staying and ultimately found. With that being said, on the issue of Kaplan [Police] assisting, the testimony did not in any way suggest that Kaplan [Police] had an independent investigation but merely assisted the parole agents who were trying to execute or seeking to execute the parole warrant.

. . . .

Agent Hardy testified that . . . the coffee filter, the metal tumbler or thermos-like object . . . they didn't dig around for it.

It was right there, she said, as she entered to the left, I believe was her testimony; or at least her hand gesture. I don't know if that was reflected in the record.

. . . .

All right. So with that being said, . . . I find that the search was lawful, that the probation officers as well as [the Kaplan Police Department] were in a lawful position to search and to seize. So therefore, the Motion to Suppress is denied.

Considering the foregoing testimony of Agent Hardy and the deference accorded to the trial court's decision, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to suppress.

Finally, we note that the supreme court has recently held that La.Code Crim.P. art. 895(A)(13)(a)[8] requires a warrantless search of a probationer to be

---

[8] Louisiana Code of Criminal Procedure Article 895 is entitled "Conditions of probation" and reads, in pertinent part:

A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:

. . . .

15

conducted by the particular probation officer assigned to him. *See State v. Brignac*, 17-448 (La. 10/18/17) _ So.3d _. *See also State v. Julien*, 17-557 (La. 10/18/17), _ So.3d _. However, the defendant in the present case was on parole, not probation, and the conditions of parole are governed by La.R.S. 15:574.4.2, which provides, in pertinent part:

> [A.] (2) The committee may also require, either at the time of his release on parole or at any time while he remains on parole, that he conform to any of the following conditions of parole which are deemed appropriate to the circumstances of the particular case:
>
> . . . .
>
> (i) Agree to visits at residence or place of employment by the probation and parole officer at any time. Further agrees to searches of person, property, residence, or vehicle, when reasonable suspicion exists that criminal activity has been engaged in while on parole.

Unlike La.Code Crim.P. art. 895(A)(13)(a), La.R.S. 15:574.4.2 does not reference the assignment of the agents involved in the search. Additionally, the defendant's motion to suppress did not allege that the evidence should have been suppressed because the agent executing the warrant was not assigned to him.

In sum, we find that the defendant's assignment of error regarding the motion to suppress is without merit.

## DECREE

For the foregoing reasons, the conviction of the defendant, Robert Sinegal, is affirmed. The trial court is instructed to correct the minutes of the sentencing hearing, as well as the commitment order, to reflect that the defendant's

---

(13)(a) Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.

convictions are to run concurrent to each other only, not to any other sentences that the defendant may be serving.

**AFFIRMED WITH INSTRUCTIONS.**